# United States District Court

## EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| UNITED STATES | § | |
| | § | |
| v. | § | Case No. 4:10-CR-00140 |
| | § | Judge Mazzant |
| ALEJANDRO CABRERA | § | |

### MEMORANDUM OPINION AND ORDER

Pending before the Court are Defendant's Petition to Request Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A) and Motion for Appointment of Counsel (Dkt. #655) and Defendant's Petition to Request Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A) (Dkt. #657).[1] The Court, having considered the motions, finds that the motion should be **DENIED**.

### BACKGROUND

On March 28, 2011, Defendant Alejandro Cabrera ("Cabrera") pleaded not guilty to conspiracy to distribute methamphetamine, a violation of 21 U.S.C. § 846. (Dkt. #492, #657 at p. 1). On November 28, 2012, Cabrera plead not guilty to conspiracy to possess with intent to distribute cocaine, another violation of 21 U.S.C. § 846 (Dkt. #492, #657 at p. 1). The Court sentenced Cabrera to 271 months of imprisonment with both charges running concurrently (Dkt. #657, Exhibit 1 at p. 21). He has served roughly 13 years and 9 months of his 271-month

---

[1] The second motion (Dkt. #657) appears to be the letter that Defendant sent to the warden of his facility requesting the warden grant him compassionate release.  The first motion (Dkt. #655) appears to be a request that Defendant wrote after the warden did not respond to his request for compassionate release.  Defendant sent the second motion to the federal courthouse in Tyler, Texas on the same day that Defendant sent the first motion to the federal courthouse in Sherman, Texas (Dkt. #655, Exhibit 3 at p. 1; Dkt. #657, Exhibit 4 at p. 1).  The filings are largely the same, albeit with one or two differing arguments.  Given that these are pro se filings, the Court construes them liberally and will consider the issues in both motions in this order.  Accordingly, when the Court considers an argument made in both filings, Defendant can assume the Court is addressing arguments from both motions, regardless of whether the Court cites to only one motion.

sentence (Dkt. #657, Exhibit 1 at p. 22). He is serving his sentence at Yazoo City USP facility. *See* https://www.bop.gov/inmateloc/ (Register Number: 88036-179). The Bureau of Prisons ("BOP") projects that Cabrera will be released by January 2, 2028. *Id.*

On July 11, 2022, Cabrera filed the pending motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A), where he now seeks a sentence reduction based on "extraordinary and compelling reasons". (Dkt. #657). In this motion, he specifically alleges that he is entitled to relief for a multitude of reasons, such as:

> Petitioner's . . . debilitating medical condition, . . . the need to avoid unwarranted sentence disparities, his harsh sentence and conditions, changes in the law and sentencing, cultural assimilation, immigration status and post sentencing rehabilitation . . . .

(Dkt. #657 at p. 1). On July 17, 2022, the warden denied Cabrera's request, arguing that Cabrera is ineligible for compassionate release based on BOP's requirements.

## LEGAL STANDARD

### I.   18 U.S.C. § 3582(c)(1)(A)

A judgment of conviction imposing a sentence of imprisonment "'constitutes a final judgment' and may not be modified by a district court except in limited circumstances." *Dillon v. United States*, 560 U.S. 817, 824 (2010) (quoting 18 U.S.C. § 3582(b)); *see also* 18 U.S.C. § 3582(c). One such circumstance arises from 18 U.S.C. § 3582(c)(1)(A)(i), commonly referred to as compassionate release.

Section 3582(c) was enacted as part of the Sentencing Reform Act of 1984. Under the first iteration of the relevant provision, district courts were authorized to grant sentence reductions on the motion of the Director of the Bureau of Prisons if the BOP could establish the following conditions: (1) extraordinary and compelling reasons warranted a sentence reduction; (2) a reduction would be consistent with the applicable policy statements of the Sentencing

Commission; and (3) a sentence reduction was warranted after consideration of the sentencing factors in 18 U.S.C. § 3553(a). *United States v. Shkambi*, 993 F.3d 388, 391 (5th Cir. 2021). Notably, Congress did not define "extraordinary and compelling reasons" or otherwise indicate how that phrase should be interpreted other than to specify that rehabilitation alone did not qualify. *Id.* (quoting 28 U.S.C. § 994(t)). Instead, Congress delegated that authority to the Sentencing Commission, directing it to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

The Sentencing Commission eventually followed Congress's direction to define "extraordinary and compelling reasons" and promulgated United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13. In application note 1 to § 1B1.13, the Sentencing Commission described what circumstances constitute "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A)(i). U.S.S.G. § 1B1.13, cmt. n.1. The Sentencing Commission essentially created four categories of "extraordinary and compelling reasons," which can broadly be characterized as: (1) circumstances arising from certain medical conditions; (2) circumstances arising from the age of the defendant;[2] (3) issues arising from the defendant's family circumstances;[3] and (4) other reasons that the BOP agrees are extraordinary and compelling in a specific case. *Id.* And because § 3582(c)(1)(A) requires that any sentence reduction be consistent with the Sentencing Commission's policy statements issued pursuant to § 994(t), the policy statements contained in

---

[1] Specifically, a defendant, who is at least 65 years old, who "is experiencing a serious deterioration in physical or mental health because of the aging process" and "has served at least 10 years or 75 percent of his or her term of imprisonment" may meet the requirement that "extraordinary and compelling reasons" exist. U.S.S.G. § 1B1.13, cmt. n.1(B).

[2] Such family circumstances exist where: (1) a defendant has minor children whose caregiver dies or becomes incapacitated; or (2) "incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13, cmt. n.1(C).

§ 1B1.13 were binding on district courts considering § 3582(c)(1)(A)(i) motions. *See United States v. Garcia*, 655 F.3d 426, 435 (5th Cir. 2011) (holding that the Sentencing Commission's policy statements issued pursuant to 28 U.S.C. § 994 are binding on district courts when considering motions brought under 18 U.S.C. § 3582(c)). U.S.S.G. § 1B1.13, cmt. n.1.

In 2018, Congress amended § 3582(c)(1)(A) with the passage of the First Step Act. The amendment provided that, in cases where the BOP does not file a compassionate release motion on the prisoner's behalf, the prisoner may personally file a motion for compassionate release. *Shkambi*, 993 F.3d at 391–92. This was the First Step Act's only change to the compassionate release framework. *Id.* at 391. Thus, while prisoners, in addition to the BOP, may now file motions for compassionate release, § 3582(c)(1)(A)(i)'s substantive requirements that govern a prisoner's entitlement to release remain the same. *See id.* at 392 ("But the [First Step Act] left undisturbed the other three § 3582 requirements.").

Following the First Step Act's expansion of who may file a motion under § 3582(c)(1)(A), courts were confronted with the question of whether the Sentencing Commission's definition of "extraordinary and compelling reasons," which was promulgated prior to the First Step Act when such motions could only be filed by the BOP, remained binding on district courts when considering compassionate release motions. The Fifth Circuit addressed this question in *Shkambi*, holding that, while U.S.S.G. § 1B1.13 is a policy statement applicable to § 3582(c)(1)(A) motions filed by the BOP, it is inapplicable to § 3582(c)(1)(A) motions filed by prisoners. 993 F.3d at 392.[4] Accordingly, while U.S.S.G. § 1B1.13 dictates the meaning of "extraordinary and compelling

---

[4] Several other circuits have similarly concluded that U.S.S.G. § 1B1.13 is inapplicable to such compassionate release motions filed by prisoners. *See, e.g., United States v. Aruda*, 993 F.3d 797, 802 (9th Cir. 2021) (per curiam); *United States v. McCoy*, 981 F.3d 271, 281 (4th Cir. 2020); *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020). *But see United States v. Bryant*, 996 F.3d 1243, 1248 (11th Cir. 2021) (holding that U.S.S.G. § 1B1.13 is an applicable, binding policy statement for all § 3582(c)(1)(A) motions).

reasons" when a § 3582(c)(1)(A) motion is filed by the BOP on a prisoner's behalf, it does not do so when, as here, a § 3582(c)(1)(A) motion is filed by a prisoner himself. *See id.* ("[T]he policy statement continues to govern where it says it governs—on the motion of the Director of the [BOP]. But it does not govern here—on the newly authorized motion of a prisoner." (internal quotations omitted)). Therefore, when a prisoner files a compassionate release motion, courts must determine what constitutes an "extraordinary and compelling reason" under § 3582(c)(1)(A)(i).

## II.  Extraordinary and Compelling Reasons

Though the Court is not bound by the Sentencing Commission's policy statement in U.S.S.G § 1B1.13 and its accompanying application notes when considering compassionate release motions filed by prisoners, the policy statement is not wholly irrelevant. Courts should still look to the policy statement for guidance in determining what constitutes "extraordinary and compelling reasons" for a sentence reduction when a prisoner files a compassionate release motion. *See United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) ("Although not dispositive, the commentary to the [U.S.S.G.] § 1B1.13 informs our analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release."); *see also, e.g., United States v. Gunn*, 980 F.3d 1178, 1180 (7th Cir. 2020) ("The substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons'; a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused."). Using the policy statement as guidance when considering prisoner-filed compassionate release motions is warranted for several reasons.

First, whether a compassionate release motion is filed by the BOP or a defendant, the statutory standard governing the motion is the same. Section 3582(c)(1)(A) provides that its

requirements for obtaining a sentence reduction apply "upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant." 18 U.S.C. § 3582(c)(1)(A). And as noted above, the First Step Act did not change § 3582(c)(1)(A)'s substantive requirements. Thus, a policy statement defining "extraordinary and compelling reasons" in the context of BOP-filed motions necessarily informs what "extraordinary and compelling" means in the context of defendant-filed motions because the same standard governs both motions. In other words, § 3582(c)(1)(A)(i)'s "extraordinary and compelling reasons" phrase does not implicate shifting substantive meanings depending on who invokes the statute.

Congress's application of a single standard to govern § 3582(c)(1)(A) motions—whether filed by the BOP or by defendants—is also evident in § 3582(c)(1)(A)'s exhaustion requirement. Before a prisoner can file a compassionate-release motion, he must first present his case to the BOP and request that the BOP file the motion on his behalf. *See* 18 U.S.C. § 3582(c)(1)(A). Fulfilling this exhaustion requirement would be a nonsensical exercise if the standard governing the defendant's entitlement to release varied significantly depending on whether the BOP grants the defendant's request. Defendants would request compassionate release based on the interpretation of "extraordinary and compelling reasons" applicable to their motions while the BOP would evaluate such requests based on the interpretation applicable to its motions. The fact that defendants must first ask the BOP to file their compassionate release motions before doing it themselves indicates that Congress intended no significant substantive distinction between BOP-filed and defendant-filed motions under § 3582(c)(1)(A).

Indeed, § 1B1.13 does not become useless as guidance for defendant-filed compassionate release motions simply because its terms state that it applies to motions brought by the Director of the BOP. Rather, § 1B1.13 and its accompanying application notes "provide a working definition

6

of 'extraordinary and compelling reasons'" because the standard applies equally to BOP motions and prisoner motions. *Gunn*, 980 F.3d at 1180. When the Sentencing Commission promulgated § 1B1.13, its intent was not to specify a unique standard for BOP motions but rather to define "extraordinary and compelling reasons" for purposes of § 3582(c)(1)(A).

Further, 28 U.S.C. § 994(t) does not direct the Sentencing Commission to adopt standards governing prisoner motions and standards governing BOP motions. Rather, § 994(t) directs the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction" under § 3582(c)(1)(A). And as the Sentencing Commission itself has explained, U.S.S.G. § 1B1.13 and its application notes constitute the Commission's implementation of § 994(t)'s directive. *See* U.S.S.G. § 1B1.13 cmt. background ("This policy statement implements 28 U.S.C. § 994(a)(2) and (t)."). Because § 3582(c)(1)(A) governs BOP motions and prisoner motions alike, the Sentencing Commission's definition of § 3582(c)(1)(A)'s terms is instructive when considering a prisoner's motion brought under § 3582(c)(1)(A)(i).

For these reasons, the Court concludes that the "extraordinary and compelling reasons" applicable to defendant-filed motions are generally those that are similar in kind and scope to those listed in U.S.S.G. § 1B1.13's application notes. To be clear, the "extraordinary and compelling reasons" contained in the Sentencing Commission's policy statement are neither exhaustive nor binding on the Court. *Shkambi*, 993 F.3d at 392. But, in any event, the Court's analysis of whether Defendant has presented "extraordinary and compelling reasons" warranting the sentence reduction he seeks will be significantly guided—though not strictly bound—by the Sentencing Commission's description in U.S.S.G. § 1B1.13 and the accompanying application notes.

### III. 18 U.S.C. § 3553(a) Factors

Even if extraordinary and compelling reasons exist, they must outweigh the 18 U.S.C.

§ 3553(a) factors to warrant sentence reduction. *See* 18 U.S.C. § 3582(c)(1)(A). These factors are:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(B) to afford adequate deterrence to criminal conduct;

(C) to protect the public from further crimes of the defendant; and

(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and sentencing range [provided for in the U.S.S.G.] . . .

(5) any pertinent [Sentencing Commission] policy statement . . .

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Id.* § 3553(a).

## ANALYSIS

Cabrera requests compassionate release based on his medical conditions in relation to COVID-19, family circumstances, post-sentencing rehabilitation, sentencing disparities, and illegal immigrant status (among other issues). *See* (Dkt. #657). Although Cabrera has met § 3582(c)(1)(A)'s exhaustion requirement, he has not established that "extraordinary and compelling reasons" warrant a reduction of his sentence. Cabrera's motion, therefore, must be

denied. Additionally, Cabrera contends that is eligible for an elderly release program via the CARES Act because of the same health issues.

**I.  Cabrera Has Met § 3582(c)(1)(A)'s Exhaustion Requirement**

Courts may not consider a modification to a defendant's sentence under § 3582(c)(1)(A)(i) unless a motion for such a modification is properly made by the Director of the BOP or by a defendant who has fully exhausted their administrative remedies. 18 U.S.C. § 3582(c)(1)(A). Since Cabrera's motion is a defendant-filed motion, the Court may only consider his motion for compassionate release if he first meets § 3582(c)(1)(A)'s exhaustion requirement. Fully exhausting administrative remedies requires a denial by the warden of a defendant's facility or waiting thirty days without receiving a response to a request, whichever is earlier. *Id.* Section 3582(c)(1)(A)'s exhaustion requirement is not waivable. *See United States v. Rivas*, 833 F. App'x 556, 558 (5th Cir. 2020) ("Because the statutory language is mandatory—that a prisoner must exhaust their BOP remedy before filing in district court—we must enforce this procedural rule . . . .").

The warden of Cabrera's facility denied Cabrera's request for compassionate release on July 19, 2022. (Dkt. #658, Exhibit 1 at p. 1). Because Cabrera's warden denied Cabrera's request for compassionate release, Cabrera has satisfied § 3582(c)(1)(A)'s exhaustion requirement. (Dkt. #658 at p. 1).

**II.  Cabrera's Medical Conditions Are Not "Extraordinary and Compelling" Reasons**

Cabrera argues that his medical conditions constitute extraordinary and compelling reasons to reduce his sentence and grant his release. Although Cabrera has satisfied § 3582 (c)(1)(A)'s exhaustion requirement, Cabrera fails to identify any specific health conditions that apply to him that warrant compassionate release. The Court views most of Cabrera's argument as a general

reason why COVID-19 related issues could constitute a valid reason for release—not an individualized reason why Cabrera himself should be released.

The Court has discretion to decide whether Cabrera's medical conditions present "extraordinary and compelling reasons" warranting a sentence reduction. *See Shkambi*, 993 F.3d at 391. The Court is not bound by the Sentencing Commission's policy statement and may consider any relevant facts in evaluating Cabrera's condition of incarceration. *Id.* Typically, courts consider whether a defendant suffers from a serious health condition, has a record of rehabilitation, the nature and circumstances of defendant's offense, and whether a sentence is based on outdated law. *See Brooker*, 976 F.3d at 238.

When considering if a defendant's health risks support compassionate release, the mere existence of COVID-19 in society cannot independently justify a sentence reduction. *See United States v. Jay Jurdi*, No. 4:12-CR-00180, 2023 WL 3436090, at *5 (E.D. Tex. May 12, 2023); s*ee also United States v. Miller*, No. 2:17-CR-015, 2020 WL 2514887, *2 (N.D. Tex. May 15, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)). For a defendant to be granted compassionate release based on COVID-19, defendant must have a serious comorbidity and evidence the facility is not effectively controlling the spread of the virus. *See United States v. Vasquez*, No. CR 2:18-1282, 2020 WL 3000709, at *3 (S.D. Tex. June 2, 2020) ("General concerns about the spread of COVID-19 or the mere fear of contracting an illness in prison are insufficient grounds to establish the extraordinary and compelling reasons necessary to reduce a sentence."). Cabrera cannot prove either one of these factors here.

In the instant case, Cabrera fails to show any serious comorbidities that would warrant compassionate release. Absent COVID-19, Cabrera presents no basis for compassionate release

based on severe medical ailments or inadequate medical care while in confinement. The Court will discuss two key facts in relation to Cabrera's health conditions that led the Court to this conclusion.

First, Cabrera's medical evaluation classified him as a Care Level 1 patient, which means he is less than 70 years old and generally considered a healthy person. (Dkt. #657, Exhibit 1 at p. 1). Care Level 1 patients are grouped as either being "healthy" or needing "simple chronic care," which means Cabrera may have limited medical needs that can be easily managed by clinician evaluations every six to twelve months. *See United States v. Hill*, No. 4:18-CR-233, 2022 WL 2392453, at *5 (E.D. Tex. July 1, 2022) (finding that an inmate who was classified as Care Level 2 was not entitled to compassionate release based on health conditions because her health could be managed through routine care). Those patients are generally considered not to be a problem by the BOP, and the Court will not grant compassionate release on the mere speculation that Cabrera might suffer from a medical problem in the future. This is especially true since Cabrera's medical records do not show any indication that he is suffering from any long COVID symptoms. Even though Cabrera suffers from "[h]ypertension, [h]igh blood pressure and loss of sight," Cabrera does not provide any evidence showing he is subject to a terminal illness (i.e., a serious and advanced illness with an end-of-life trajectory). (Dkt. #657 at p. 2); *see* U.S.S.G. § 1B1.13(1)(A), cmt. n.1. Granting compassionate release to Cabrera based on the facts presented would require the Court to ignore Cabrera as he is now, and merely grant it because he may suffer from debilitating medical conditions in the future. The Court declines to establish such a precedent.

Second, the Yazoo City USP facility has been rather successful in controlling the spread of the virus. Cabrera argues that his facilities under the GEO Group, Inc. had substandard healthcare services in comparison to other Bureau facilities. However, the Court notes that Cabrera received a COVID-19 vaccine and a booster in the North Lake Correctional Facility. (Dkt. #657,

Exhibit 33 at pp. 1–2); s*ee United States v. Lipscomb*, No. 2:18-CR-34, 2021 WL 734519, at *2 (M.D. Fla. Feb. 25, 2021) (stating that the "BOP is [not] taking COVID-19 lightly" when the defendant received two doses of a vaccine). Moreover, he was moved to a new facility—Yazoo City USP—since the time of his petition. Only two prisoners out of the 4,587 inmates placed in the Yazoo City USP facility have a positive diagnosis of COVID-19. *See* https://www.bop.gov/about/statistics/statistics_inmate_covid19 (Register Number: 88036-179). Therefore, the Court refuses to find that Geo Group, Inc. is "not effectively controlling the spread of the virus." *See Vasquez*, 2020 WL 3000709, at *3.

### III. Cabrera's Age Is Not An "Extraordinary and Compelling" Reason

The Court points out that Cabrera's age does not warrant a sentence reduction in this case. Although the Court is not bound to the U.S. Sentencing Commission's policy statement, the policy statement is helpful to the Court in its analysis. In the relevant policy statement, the Sentencing Commission requires a defendant be at least sixty-five years old for the age of the defendant to be considered as a valid basis for compassionate release. U.S.S.G. § 1B1.13, cmt. n.1(B). Since Cabrera is sixty—not sixty-five—he does not qualify for a reduction in section based on his age.

### IV. Cabrera's Post-Sentencing Rehabilitation Is An Insufficient "Extraordinary and Compelling" Reason

Likewise, rehabilitation alone cannot support a claim for sentence reduction, although it may be considered as a factor in evaluating "extraordinary and compelling reasons." *See Brooker*, 976 F.3d at 237–38; *United States v. Hudec*, No. 4:91-cr-0001, 2020 WL 4925675, at *5 (S.D. Tex. Aug. 20, 2020). Here, Cabrera successfully completed numerous BOP adult education courses and other rehabilitative programs during his incarceration. (Dkt. #657, Exhibit 1 at p. 1, #657 at pp. 4–5). Accordingly, the Court finds that Cabrera's rehabilitative record supports his

release. That said, without evidence of additional "extraordinary and compelling" reasons, Cabrera's admirable rehabilitative record is insufficient to justify his release.

Weighing the evidence, Cabrera fails to prove that his incarceration is "extraordinary and compelling" under § 3582(c)(1)(A)(i)'s framework. *See United States v. Stowe*, No. 4:11-CR-00803, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019) (citation omitted) (stating that the defendant generally "has the burden to show circumstances meeting the test for compassionate release").

In sum, Cabrera fails to prove that he has a valid "extraordinary and compelling" reason to warrant a sentence reduction under the § 3582(c)(1)(A)(i) framework. Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.). Compassionate release is one of those exceptions, but a defendant must conform to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Because Cabrera failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), the pending motion must be denied.[5]

## V.  Elderly Release Program Under CARES

Cabrera also argues that he is eligible for an elderly release program via the CARES Act because of the same health issues (Dkt. #655). Cabrera's argument about elderly release appears to come from a misunderstanding about the Elderly Offender Pilot Program under 34 U.S.C. § 60541(g), or alternatively, 18 U.S.C. § 3624 which was modified by the CARES Act. The Elderly Offender Pilot Program allows qualifying elderly prisoners to be removed from a BOP facility and placed into home confinement in certain circumstances. 34 U.S.C. § 60541(g). But the

---

[5] The Defendant raises additional arguments in their requests compassionate release. However, these arguments are not applicable to the Court's analysis.

relevant statute, § 60541(g), "does not give authority to the federal courts to place an offender in the [p]rogram; that authority is given to the Attorney General." *Melot v. Bergami*, 970 F.3d 596, 599–600 (5th Cir. 2020). Thus, assuming Defendant is referring to that program, the Court is without jurisdiction to grant the relief.

Assuming Defendant is referring to the CARES Act itself, however, the Court is still without jurisdiction to grant Defendant his requested relief. "The CARES Act was the federal government's comprehensive response to the COVID-19 crisis and certain provisions addressed the release of eligible inmates in the prison population." *United States v. Koons*, 455 F. Supp. 3d 285, 287 n.4 (W.D. La. 2020). In turn, the CARES Act expanded the BOP's authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement. *Id.* Under § 3624(c)(2), the BOP may "place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). The CARES Act provides, however, that if the Attorney General finds that emergency conditions will materially affect the function of the BOP, the "BOP Director may increase the maximum of time that a prisoner may spend in home confinement." *Koons*, 455 F. Supp. 3d at 287 n.4. Regardless, home confinement determinations rest with the BOP, so courts lack the jurisdiction to order home confinement under § 3624(c)(2). *Id.*; *see also Lee v. Dir. of BOP*, No. 20-CV-429, 2020 WL 6324323, at *3 (W.D. Tex. Oct. 28, 2020); *Williams v. United States*, No. 4:21-CR-0035, 2022 WL 1189996, at *6 (N.D. Tex. Apr. 21, 2022); *United States v. Stanley*, No. 4:04-CR-00088, 2022 WL 1498108, at *6 n.4 (E.D. Tex. May 11, 2022).

Given that this Court lacks authority, it cannot reduce Cabrera's sentence pursuant to any elderly release program via the CARES Act.

\* \* \*

Under the rule of finality, federal courts may not "modify a term of imprisonment once it has been imposed" unless one of a few "narrow exceptions" applies. *Freeman v. United States*, 564 U.S. 522, 526 (2011) (citing 18 U.S.C. § 3582(c)) (plurality op.); *see also Dillon*, 560 U.S. at 819 (same). Compassionate release is one of those exceptions, but a defendant must conform both to the procedural and substantive requirements of § 3582(c)(1)(A) for a court to modify a sentence. Because Cabrera failed to meet the controlling requirements for compassionate release set forth in § 3582(c)(1)(A)(i), his motion must be denied.

## CONCLUSION

It is therefore **ORDERED** that Defendant's Petition to Request Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A) and Motion for Appointment of Counsel (Dkt. #655) and Defendant's Petition to Request Compassionate Release/Reduction in Sentence Pursuant to 18 U.S.C. § 3582(C)(1)(A) (Dkt. #657) are hereby **DENIED**. It is further **ORDERED that** Defendant Alejandro Cabrera's request for the appointment of counsel (Dkt. #655) is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED this 14th day of June, 2023.**

AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE